UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CARLOS MARINE,

                    Plaintiff,

        -against-

VIEJA QUISQUEYA RESTAURANT
CORP. (D/B/A QUISQUEYA
RESTAURANT), JOSE DANIEL GOMEZ,
EDUARDO GOMEZ, MARIA GRIMALDI
RAMOS, and RAFAEL DOE,

                    Defendants.
--------------------------------------------------------X

REPORT AND
RECOMMENDATION
20 CV 4671 (PKC)(RML)

LEVY, United States Magistrate Judge:

          By order dated May 23, 2022, the Honorable Pamela K. Chen, United States

District Judge, referred plaintiff's motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiff's motion

be granted and that plaintiff be awarded $64,353.00 in damages, plus pre-judgment interest, post-

judgment interest, and $5,614.00 in attorney's fees and costs.

## BACKGROUND AND FACTS

          Plaintiff Carlos Marine ("Marine" or "plaintiff") commenced this wage and hour

action on October 1, 2020, against defendants Vieja Quisqueya Restaurant Corp. d/b/a

Quisqueya Restaurant (the "corporate defendant" or the "Restaurant"), Jose Daniel Gomez,

Eduardo Gomez, Maria Grimaldi, and Rafael Doe[1] ("individual defendants," or together with the

_____

[1] Plaintiff did not provide evidence that Doe was served with the amended complaint and
excluded Doe from the notice of default and counsel's declaration in support of plaintiff's

                                     (Continued. . .)

Restaurant, "defendants") asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL"). (Complaint, dated Oct. 1, 2020 ("Compl."), Dkt. No. 1.) On March 24, 2021, plaintiff filed an amended complaint to remove Quisqueya Restaurant I Inc. as a defendant and add defendant Vieja Quisqueya Restaurant Corp. (Amended Complaint, dated Mar. 24, 2021 ("Am. Compl."), Dkt. No. 21.) The individual defendants are alleged to be owners, managers, principals, or agents of the Restaurant, a domestic corporation with a principal place of business at 97-01 Roosevelt Avenue in Queens, New York. (Id. ¶¶ 3, 22-27.) Defendants allegedly employed plaintiff as a food preparer, dishwasher, porter, and delivery worker from approximately July 6, 2016 to on or about January 7, 2018. (Id. ¶¶ 4, 38, 40.)

All defendants were properly served with the summons and, with the exception of defendant Rafael Doe, the amended complaint. (See Affidavit of Service of Donald DelPrete, sworn to Oct. 13, 2020, Dkt. No. 14; Affidavit of Service of James Perone, sworn to Apr. 5, 2021, Dkt. No. 24; Affidavits of Service of Denise Lewis, sworn to Apr. 26, 2021, Dkt. Nos. 25-26; Affidavit of Service of Denise Lewis, sworn to June 23, 2021, Dkt. No. 27.) Defendants have failed to answer or otherwise move with respect to the complaint.

Plaintiff moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) as to all defendants on August 31, 2021. (See Request for Certificate of Default, filed Aug. 31, 2021, Dkt. No. 29.) On September 3, 2021, the Clerk of the Court noted the defaults of the Restaurant as well as the individual defendants. (See Clerk's Entry of Default, dated Sept. 3, 2021, Dkt. No. 31.) On October 5, 2021, plaintiff moved for default judgment. (See Motion for

---

motion for default judgment. Accordingly, I have excluded defendant Doe from my analysis and findings.

Default Judgment, dated Oct. 5, 2021, Dkt. No. 32.)  Judge Chen referred plaintiff's motion to me on May 23, 2022.  (See Order Referring Motion, dated May 23, 2022.)

Plaintiff seeks a default judgment on claims under the FLSA and NYLL for defendants' failure to (1) pay him minimum wages and overtime compensation, (2) pay him spread of hours wages, (3) reimburse him for purchasing tools of the trade, and (4) provide proper wage notices and wage statements.  (Am. Compl. ¶¶ 6-8, 15, 46-59, 60; see also Declaration of Michael Faillace, Esq. in Support of Plaintiff's Motion for Default Judgment, dated Oct. 5, 2021 ("Faillace Decl."), Dkt. No. 33.)  Plaintiff requests an award of minimum wages, overtime wages, spread of hours wages, liquidated damages, reimbursement for the purchase of tools of the trade, statutory damages, pre-judgment interest, and attorney's fees and costs.  (Faillace Decl. ¶¶ 71-72.)

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a).  Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment.  FED. R. CIV. P. 55(b)(2).  To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit.  Here, as explained above, plaintiff has demonstrated that he properly served defendants with the summons and amended complaint.  Plaintiff has also demonstrated that he served the Motion for Default Judgment and accompanying submissions on

3

defendants in compliance with Local Rule 55.2(c).  (See Declaration of Service of Fidel Lozano, dated Oct. 7, 2021, Dkt. No. 34.)

A.  Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law."  Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted).  A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [plaintiff's] allegations establish [defendants'] liability as a matter of law."  Id.

Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid minimum and overtime wages under the FLSA and NYLL (Am. Compl. ¶¶ 46-48, 51-52, 60-64), unpaid spread of hours wages under the NYLL (id. ¶ 61), failure to reimburse plaintiff for purchasing tools of the trade (id. ¶ 60), and failure to provide proper wage notices and wage statements under the NYLL (id. ¶¶ 55-59, 72-75, 81-82.)  The extent to which plaintiff can recover damages for these violations initially depends on whether: (1) his claims were timely; (2) he is a covered employee under the FLSA and the NYLL; and (3) defendants were plaintiff's employers under the FLSA and NYLL.

1.  <u>Timeliness</u>

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, the complaint, which was filed on October 1, 2020, alleges willful violations of the FLSA.  (<u>See</u> Compl.; Am. Compl. ¶¶ 75, 78, 80, 84, 91, 95, 100, 104, 108.) Therefore, the FLSA's three-year statute of limitations applies.  Because plaintiff alleges that he was not properly paid wages from October 1, 2017, through January 7, 2018, I find that his claims are timely under the FLSA.  (Am. Compl. ¶¶ 40-48.)  However, the portions of plaintiff's claims that occurred prior to October 1, 2017, (<u>see id.</u> ¶¶ 47-48, 52), are not timely under the FLSA.  Plaintiff may only recover for the federal violations that occurred on or after October 1, 2017.

Regardless of willfulness, plaintiff's claims must arise within six years prior to the filing of the complaint to be timely under the NYLL.  <u>See</u> N.Y. Lab. L. §§ 198(3), 663(3). Accordingly, plaintiff contends that he may recover for an additional 309 workdays under the NYLL for the period from July 6, 2016 until his separation from employment on January 7, 2018.  (<u>See</u> Faillace Decl. ¶ 56.)  As these additional workdays arose within six years prior to the filing of the complaint on October 1, 2020, plaintiff may recover under the NYLL for claims that occurred on or after his start date, July 6, 2016.

2.  <u>Employee Coverage</u>

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, a plaintiff in a wage and hour action must show that he or she was defendants' employee, and that defendants were employers subject to the coverage of each statute.  For purposes of the FLSA, an employee is "any individual employed by an employer," meaning any

individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1); (g).

Absent a statutory exemption, such individuals are protected by the FLSA, so long as they work

for a covered employer.  An employer is defined as "any person acting directly or indirectly in the

interest of an employer in relation to an employee." [2]  29 U.S.C. § 203(d).  "Person" is defined as

"an individual, partnership, association, corporation, business trust, legal representative, or any

organized group of persons."  Id. § 203(a).  In addition, for employees to be covered by the

FLSA, they must show either that their employer was an enterprise engaged in interstate

commerce or that their work as employees regularly involved them in interstate commerce.  See

id. § 203(s)(1).

        Plaintiff has adequately pleaded that he was an employee to whom no statutory

exemption applies, insofar as he alleges that he was hired as a delivery worker at the Restaurant

and he worked for defendants from approximately July 6, 2016, until January 7, 2018.  (Am.

Compl. ¶¶ 6, 20, 38, 40, 43-45; see also Declaration of Carlos Marine, dated June 16, 2021

("Marine Decl."), Dkt. No. 33-8, ¶¶ 7-9.)  In addition, plaintiff alleges that the corporate

defendant had a gross volume of sales greater than $500,000 per year during the relevant period,

and that the Restaurant was engaged in commerce as defined by the FSLA.  (Am. Compl. ¶¶ 36-

37.)  Thus, plaintiff alleges that he is a covered employee under the FLSA.  This allegation is

conclusory on its face, insofar as it restates the statutory definition of enterprise coverage without

providing additional facts.  The only supporting factual allegation is that "numerous items that

were used in the restaurant on a daily basis are goods produced outside of the State of New

---

[2] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018).

York." (Am. Compl. ¶ 37.) Nevertheless, multiple courts in this district have held that similarly conclusory allegations of enterprise coverage may be accepted on a motion for default judgment where it may be inferred from the type of business enterprise that it was engaged in interstate commerce. See, e.g., Newman v. W. Bar & Lounge, Inc., No. 20 CV 1141, 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021) ("[T]he court can reasonably infer that at least some materials handled by the plaintiff-employee have moved or engaged in interstate or international commerce, such as the food, beverages, products, materials, and equipment utilized by the defendants."); Acosta v. DRF Hosp. Mgmt. LLC, No. 18 CV 346, 2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019) (finding that an allegation that a restaurant "had employees engaged in commerce or in the production of goods for commerce and had annual gross revenues of at least $500,000" is sufficient to satisfy the interstate commerce requirement), report and recommendation adopted, 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("[I]t is reasonable to infer that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State. . . . Las Delicias requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more. It is also reasonable to infer that some of these materials moved or were produced in interstate commerce."). I agree with those courts that have adopted this approach, and therefore find that plaintiff has established that he is a covered employee under the FLSA and the NYLL.

   3.   Employer Status of Corporate and Individual Defendants

           Plaintiff seeks to hold four defendants—one corporation and three individuals—liable for his unpaid wages. (Am. Compl. ¶¶ 2-3, 22-27; Faillace Decl. ¶¶ 7-10.) To establish

7

the corporate defendant's liability under the FLSA and NYLL, plaintiff must allege that the Restaurant was an "enterprise engaged in commerce or in the production of goods for commerce" within the applicable statutory definition.  29 U.S.C. § 203(s)(1).  As discussed above, plaintiff has sufficiently established that the Restaurant was his employer and that the Restaurant engaged in commerce.  (See Am. Compl. ¶¶ 1-3, 35.)

   To hold the individual defendants liable under the FLSA and NYLL, plaintiff must allege that the individual defendants were his "employers" within the broad meaning of 29 U.S.C. § 203(d).  See Fermin, 93 F. Supp. 3d at 35-37.  The Second Circuit has set forth a series of non-exclusive factors for evaluating the "economic reality" of a given relationship to determine whether an employment relationship exists.  See Carter v. Dutchess Cmty. Coll., 738 F.2d 8, 12 (2d Cir. 1984).  These factors include whether the alleged employer: (1) had the power to hire and fire the employee; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.  Id.; see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  Here, plaintiff alleges that all individual defendants "possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation."  (Am. Compl. ¶ 29.)  Furthermore, plaintiff alleges that all individual defendants "determine[d] the wages and compensation of the employees of [the Restaurant], including Plaintiff Marine, establish[ed] the schedules of the employees, maintain[ed] employee records, and [had] the authority to hire and fire employees."  (Am. Compl. ¶¶ 24-27.)  Thus, plaintiff has alleged all four of the Carter factors and I therefore find that the individual defendants were plaintiff's employers.  Accordingly, plaintiff has

established the liability of the corporate defendant as well as the individual defendants under the FLSA and NYLL.

B.  Damages

Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the plaintiff to establish [his] entitlement to recovery."  Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

Plaintiff requests damages in the total amount of $76,931.27 for unpaid minimum and overtime wages, spread of hours pay, liquidated damages, and pre-judgment interest. (Faillace Decl. ¶ 39; see also Damages Calculations, attached as Ex. 9 to Faillace Decl., Dkt. No. 33-9.)  I will address each in turn.

1.  Unpaid Wages

"As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff['s] recollection and estimates of hours worked are presumed to be correct.'"  Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for

which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l. Inc., 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").  Here, because defendants have defaulted and no employment records have been produced, the court will presume the accuracy of Marine's recollection and estimates of hours worked.

Marine asserts that from approximately July 6, 2016, until about May 15, 2017, he worked from approximately 6:00 p.m. until about 2:40 a.m. or 3:00 a.m. on Tuesdays, Wednesdays, and Thursdays; and from approximately 6:00 p.m. until about 4:00 a.m. on Fridays, Saturdays, and Sundays.  (Marine Decl. ¶ 11.)  Accordingly, plaintiff alleges that he typically worked fifty-nine to sixty-one hours per week during the period of July 6, 2016, to May 15, 2017.  (Id.)  Plaintiff further asserts that from approximately May 16, 2017, until about January 7, 2018, he worked from approximately 6:00 p.m. until about 2:40 a.m. or 3:00 a.m. on Tuesdays, Wednesdays, and Thursdays; from approximately 6:00 p.m. until about 4:00 a.m. on Fridays and Saturdays; and from approximately 6:00 p.m. until about 2:00 a.m. on Sundays.  (Id. ¶ 12.)  Thus, plaintiff alleges that he typically worked fifty-four to fifty-five hours per week from May 16, 2017 to January 7, 2018.  (Id.)  Plaintiff asserts that at all relevant times, defendants paid him a fixed salary of $390 per week.  (Id. ¶ 14; see also Faillace Decl. ¶ 46; Am Compl. ¶ 50.)

a.  *Minimum Wage*

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work.  29 U.S.C. § 206; N.Y. LAB. L. § 652.  The

FLSA required defendants to pay plaintiffs a minimum hourly wage of $7.25 at all relevant times. 29 U.S.C. § 206(a)(1). However, New York law obligated defendants to pay plaintiff a minimum hourly wage of $9.00 from December 31, 2015, to December 30, 2016; $11.00 from December 31, 2016, to December 30, 2017; and $13.00 from December 31, 2017, to December 30, 2018.[3] N.Y. LAB. L. § 652(a)(i). Because New York's minimum wage is higher, plaintiff may recover those amounts. 29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

To determine whether defendants paid plaintiff at least minimum wage, it is first necessary to determine his "regular hourly rate of pay." As an employee of a restaurant, plaintiff is subject to New York's Hospitality Industry Wage Order ("Order"). See generally N.Y. COMP. CODES R. & REGS. ("N.Y.C.R.R.") tit. 12 § 146. Under the Order, an "employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." Id. § 146-3.5(b); see also Long Lin v. New Fresca Tortilla, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), report and recommendation adopted, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).

| Regular Hourly Rate of Pay Calculation | | | | |
|---|---|---|---|---|
| Time Period | Total Weekly Earnings | Actual Hours Worked per Week | Regular Hourly Rate of Pay (Total Weekly Earnings / 40 hours) | Required Minimum Wage |
| 7/6/2016-12/31/2017 | $390 | 60 | $9.75 | $9.00 |

---

[3] This is the minimum wage for "large employers." Plaintiff provides no allegations as to how many employees worked for defendants. However, he uses the minimum wages applicable to "large employers"—defined as "[e]very employer of eleven or more employees," N.Y. LAB. L. § 652(1)(a)(i)—in his damages calculations. (See Damages Calculations, Ex. 9, Dkt. No. 33-9.) Given plaintiff's allegation that the Restaurant had over $500,000 in gross annual sales (Am. Compl. ¶¶ 36-37), it can reasonably be inferred that defendants employed at least eleven people.

| 1/1/2017- 5/15/2017 | $390 | 60 | $9.75 | $11.00 |
| 10/1/2017- 12/31-2017 | $390 | 55 | $9.75 | $11.00 |
| 1/1/2018- 1/7/2018 | $390 | 55 | $9.75 | $13.00 |

As reflected in the above chart, plaintiff worked more than forty hours per week. (See also Marine Decl. ¶¶ 11-12; Damages Calculations.)  Therefore, his regular hourly rate of pay is calculated using forty hours.  Based on plaintiff's submissions and my own calculations, I find that defendants did not pay Marine a regular hourly rate of pay that was greater than the New York minimum wage during the last three identified time periods.[4]  To calculate the damages that Marine incurred as a result of defendants' failure to pay New York's minimum wage, the difference between the applicable minimum wage and his regular hourly wage is multiplied by forty.  See Long Lin, 2019 WL 3716199, at *3.  The number is then multiplied by the number of weeks Marine worked during the time periods at issue.  Based on the calculations in the below table and plaintiff's Damages Calculations, I respectfully recommend that Marine be awarded a total of $2,730.00 in unpaid minimum wages.[5]

---

[4] It bears noting that Marine was paid above the required minimum wage for a forty-hour week for the period of July 6, 2016, to December 31, 2017.  However, the regular rate of pay only accounts for forty of the sixty hours per week Marine worked in that period.  When one considers Marine's total weekly earnings each period, he was not paid at the required minimum wage across all sixty hours.  Nevertheless, the discussed minimum wage damages account only for Marine's first forty hours each period; the remaining twenty hours from the first period are compensated within the overtime wage calculations in the next section.

[5] Although plaintiff did not state the income he earned from tips while working for defendants, this omission is irrelevant in the context of defendants' default.  Under both the FLSA and the NYLL, the burden is on the employer to demonstrate that it complied with the relevant tip credit provisions.  See Chichinadze v. BG Bar Inc., 517 F. Supp. 3d 240, 254 (S.D.N.Y. 2021) (FLSA); Mendez v. MCSS Rest. Corp., No. 16 CV 2746, 2021 WL 4480569, at *10 (E.D.N.Y. Sept. 30, 2021) (NYLL).  To reduce an employee's minimum wages by the amount of his or her income from gratuities, state and federal law strictly require employers to: (1) inform employees that
(Continued. . .)

| Unpaid Minimum Wage Calculations | | | | |
|---|---|---|---|---|
| Time Period | Difference Between Minimum Wage & Regular Hourly Wage | Weekly Minimum Wage Shortfall | Number of Weeks | Period Minimum Wage Shortfall |
| 7/6/2016-12/31/2017 | -$0.75 | N/A | N/A | N/A |
| 1/1/2017-5/15/2017 | $1.25 | $50 | 19 | $950 |
| 10/1/2017-12/31-2017 | $1.25 | $50 | 33 | $1,650 |
| 1/1/2018-1/7/2018 | $3.25 | $130 | 1 | $130 |
| | | | **TOTAL:** | $2,730.00 |

a. *Overtime Compensation*

Plaintiff alleges that defendants willfully violated the FLSA and NYLL by failing to pay him overtime wages. (Am. Compl. ¶¶ 78-80.) Plaintiff is entitled to overtime compensation under the FLSA and NYLL at the rate of one and one-half times his regular rate of pay for the hours he worked in excess of forty during a workweek. See 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2. "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed.'" Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)). The

---

they intend to credit tips toward employees' minimum wages, and (2) allow employees to retain all of their income from tips. 29 U.S.C. § 203(m); N.Y.C.R.R. tit. 12, § 146-1.3 (2011); see also Lanzetta v. Florio's Enters., Inc., 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011) (citing Padilla v. Malapaz, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009)). The facts before me do not show that defendants gave plaintiff notice that his minimum wages would be reduced by his tip income. On the contrary, Marine alleges that defendants never notified him that his tips were being included as an offset for wages and that defendants did not account for these tips in any daily or weekly accounting of plaintiff's wages. (Am. Compl. ¶¶ 72-73.) Because at least one (and possibly both) of the prerequisites for a tip credit are not satisfied, plaintiff's tip income should not detract from his damages.

method for calculating overtime is the same under both statutes, but a plaintiff may not receive double damages. See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017). Because plaintiff's recovery will be greater under the NYLL, damages will be calculated based on his NYLL unpaid wages claim.

Plaintiff alleges that he consistently worked at least fifty-five to sixty hours per week and that defendants never paid him overtime compensation. (See Am. Compl. ¶¶ 46-52, 61, 64; Marine Decl. ¶¶ 11-12.) To calculate the overtime compensation he is owed, the number of hours he worked over forty each week is multiplied by 150 percent of the higher of (i) his regular rate of pay, or (ii) the applicable minimum wage. See Long Lin v. New Fresca Tortilla, Inc., 2019 WL 3716199, at *3. This results in the amount of overtime compensation owed to plaintiff on a weekly basis. To obtain the total overtime compensation owed for each time period, the weekly amount is multiplied by the number of weeks in that time period.

After reviewing plaintiff's overtime damages calculations (see Damages Calculations), I find that they are complete and accurate. Based on the calculations in the below table and plaintiff's calculations, I respectfully recommend that plaintiff be awarded $22,042.50 in unpaid overtime wages.

| Overtime Calculations | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Time Period | Hours Worked | Hours Over | 150% of Min. Wage or Regular Rate | Minimum Wage | Regular Rate | Weekly Overtime Due | Number of Weeks | Period Overtime Due |
| 7/6/2016-12/31/2017 | 60 | 20 | $14.63 | $9.00 | $9.75 | $292.50[6] | 25 | $7,312.50 |

---

[6] The weekly overtime due for this period was calculated as follows: (($390/40 hours) x 1.5) x 20 hours. (Damages Calculations.)

14

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1/1/2017-5/15/2017 | 60 | 20 | $16.50 | $11.00 | $9.75 | $330[7] | 19 | $6,270 |
| 10/1/2017-12/31/2017 | 55 | 15 | $16.50 | $11.00 | $9.75 | $247.50[8] | 33 | $8,167.50 |
| 1/1/2018-1/7/2018 | 55 | 15 | $19.50 | $13.00 | $9.75 | $292.50[9] | 1 | $292.50 |
| | | | | | | **TOTAL**: | $22,042.50 |

   2.   <u>Spread of Hours</u>

       Plaintiff also seeks spread of hours pay under the NYLL.  (Am. Compl. ¶¶ 6, 8, 15, 61, 107-108.)  "The spread of hours is the length of the interval between the beginning and end of an employee's workday."  N.Y.C.R.R. tit. 12, § 146-1.6(a).  "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."  <u>Id.</u>  Thus, for each day plaintiff worked a shift of more than ten hours, plaintiff is entitled to an additional hour of pay at the minimum wage rate.  According to plaintiff, he worked shifts of more than ten hours three days a week from July 6, 2016 to May 15, 2017, and then two days a week from May 16, 2017 to January 8, 2018.  (<u>See</u> Marine Decl. ¶¶ 11-12.)  Based on the calculations in the below table and plaintiff's supporting documentation, I respectfully recommend plaintiff be awarded a total of $2,054.00 in spread of hours wages.

---

[7] The weekly overtime due for this period was calculated as follows: ($11.00 x 1.5) x 20 hours. (<u>Id.</u>)

[8] The weekly overtime due for this period was calculated as follows: ($11.00 x 1.5) x 15 hours. (<u>Id.</u>)

[9] The weekly overtime due for this period was calculated as follows: ($13.00 x 1.5) x 15 hours. (<u>Id.</u>)

| Spread of Hours Calculations | | | | |
|---|---|---|---|---|
| Time Period | Days per Week That Exceeded 10 Hours | Min. Wage Rate | Number of Weeks Owed SOH Pay | Amount Due for Period |
| 07/06/2016-12/31/2016 | 3 | $9.00 | 25 | $675.00 |
| 01/01/2017-05/15/2017 | 3 | $11.00 | 19 | $627.00 |
| 05/16/2017-12/31/2017 | 2 | $11.00 | 33 | $726.00 |
| 01/01/2018-01/08/2018 | 2 | $13.00 | 1 | $26.00 |
| | | | **TOTAL**: | $2,054.00 |

3.   Liquidated Damages

Plaintiff additionally requests liquidated damages for his unpaid minimum wages, overtime wages, and spread of hours under the NYLL.  (See Faillace Decl. ¶¶ 59, 62, 65; Damages Calculations); see also Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (noting that plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the same time period).  The NYLL allows plaintiffs to recover liquidated damages in the amount of 100 percent of minimum wages and overtime wages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. LAB. L. §§ 198(1-a), 663; see also Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012).  The NYLL also authorizes liquidated damages for spread of hours claims.  See, e.g., Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016).

Here, defendants have not answered or otherwise appeared in this action, much less demonstrated a "good faith" basis for believing the underpayment of wages was lawful.  I

accordingly recommend that plaintiff be awarded $26,826.50 in liquidated damages, which is the amount equal to his unpaid minimum wages, overtime compensation, and spread of hours pay.

4.    Tools of the Trade

Plaintiff also alleges that he was not reimbursed for "tools of the trade" expenditures.  (Am. Compl. ¶ 60; Faillace Decl. ¶ 34; Marine Decl. ¶ 22.)  Both the FLSA and the NYLL require employers to reimburse their employees for costs associated with the purchase and maintenance of "tools of the trade," where such expenditures bring the employee's wages below the statutory minimum.  See 29 C.F.R. § 531.35 ("[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act."); N.Y.C.R.R. tit. 12, § 146-2.7(c) ("If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage.").

Marine requests reimbursement in the amount of $700.  (See Faillace Decl. ¶ 34; Marine Decl. ¶ 22; Damages Calculations.)  Marine attests that defendants required him to "purchase 'tools of trade' with [his] own funds – including a bicycle."  (Marine Decl. ¶ 22.) Plaintiff's submissions also stipulate that he was required to spend his own funds on maintenance of the bicycle.  (Faillace Decl. ¶ 34.)  Since Marine was owed unpaid overtime under the FLSA, his "tools of the trade" expenditures further cut into the wage he was owed and to which he was entitled.  See Ortega v. JR Primos 2 Rest. Grp., No. 15 CV 9183, 2017 WL 2634172, at *3 (S.D.N.Y. June 16, 2017) (finding liability for tools of the trade costs when plaintiff "adequately allege[d] that he was owed unpaid overtime and that the defendants failed to reimburse him for

his purchase of a bicycle, bike lights, helmet, and jacket"); <u>Wei v. Lingtou Zhengs Corp.</u>, No. 13 CV 5164, 2015 WL 739943, at *13 (E.D.N.Y. Dec. 3, 2014) ("Given that plaintiff purchased and maintained the bicycle in order to complete his duties as a delivery man, was not reimbursed for those costs, and did not receive overtime wages, the Court finds that plaintiff is entitled to damages for the cost of maintaining the electronic bicycle.") (citations omitted), <u>report and recommendation adopted</u>, 2015 WL 739943, at *1 (E.D.N.Y. Feb. 20, 2015); <u>see also</u> <u>He v. Home on 8th Corp.</u>, 2014 WL 3974670, at *9 (S.D.N.Y. Aug. 13, 2014) (holding defendant liable for bicycle-related expenses when plaintiff was not paid for overtime worked). Accordingly, I respectfully recommend that plaintiff be awarded $700 in damages for the cost of purchasing and maintaining his bicycle.

     5.  <u>Wage Notices</u>

       Additionally, plaintiff seeks $5,000 in statutory damages for defendants' failure to provide annual wage notices. (Faillace Decl. ¶¶ 60-61.) New York's Wage Theft Prevention Act ("WTPA") requires employers to "provide [their] employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances." N.Y. LAB. L. § 195(1). Employers are required to provide such written wage notices "at the time of hiring." 2014 N.Y. Laws ch. 537 § 1, <u>amending</u> N.Y. LAB. L. § 195(1-a). Plaintiff asserts that he never received a wage notice from defendants. (Faillace Decl. ¶ 60; Marine Decl. ¶ 21; Am. Compl. ¶ 59.) Statutory damages under the WTPA are $50 per day, up to a maximum of $5,000. N.Y. LAB. L. § 198(1-b)). Based on plaintiff's declarations, he worked for defendants for over 100 days. (<u>See</u> Marine Decl. ¶¶ 11-12.) As such, plaintiff is entitled to the maximum statutory damages of $5,000 for wage notice violations.

6. <u>Wage Statements</u>

In addition to the wage notice requirement, the WTPA requires employers to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis[;] . . . deductions; allowances, if any, claimed as part of the minimum wage; and net wages." N.Y. LAB. L. § 195(3); <u>see also</u> <u>Pastor v. Alice Cleaners, Inc.</u>, No. 16 CV 7264, 2017 WL 5625556, at *5 (S.D.N.Y. Nov. 21, 2017) (citing N.Y. LAB. L. § 195(3)). Plaintiff alleges that he never received such wage statements. (Faillace Decl. ¶ 60; Marine Decl. ¶¶ 17-21; Am. Compl. ¶¶ 55-57.) As of February 27, 2015, "an employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000." <u>Pastor</u>, 2017 WL 5625556, at *5 (citing N.Y. LAB. L. § 198(1–d)). Since plaintiff worked more than twenty days after that date, I find that he is entitled to $5,000 for wage statement violations.

7. <u>Pre-judgment Interest</u>

Lastly, plaintiff requests pre-judgment interest. (Faillace Decl. ¶¶ 71, 76.) A plaintiff may recover both pre-judgment interest and liquidated damages under the NYLL because the measures serve the two distinct purposes of "compensat[ing] a plaintiff for the loss of use of money" and "a penalty," respectively. <u>Reilly v. Natwest Mkts. Grp. Inc.</u>, 181 F.3d 253, 265 (2d Cir. 1999) (citation omitted); <u>see also</u> <u>Villanueva v. 179 Third Ave. Rest. Inc.</u>, 500 F. Supp. 3d 219, 243 (S.D.N.Y. 2020). The calculation of pre-judgment interest is based on unpaid wages, not liquidated damages. <u>Fermin</u>, 93 F. Supp. 3d at 49 (quoting <u>Mejia v. East Manor USA Inc.</u>, No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), <u>report and recommendation adopted</u>, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)). Nor is pre-judgment

interest calculated on statutory damages for failure to provide wage statements.  See Feuer v.

Cornerstone Hotels Corp., No. 14 CV 5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 21, 2020)

(citing Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), aff'd, 752 F.

App'x 33 (2d Cir. 2018)).

      The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004.

Where damages were incurred at various times, interest may be calculated from a single

reasonable intermediate date.  Id. § 5001(b).  The midpoint of a plaintiff's employment is a

reasonable intermediate date for purposes of calculating pre-judgment interest.  See Fermin, 93

F. Supp. 3d at 49; Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).

I have determined that the midpoint of plaintiff's employment was April 7, 2017.  (See Faillace

Decl. ¶ 21; see also Damages Calculations.)  Accordingly, I respectfully recommend that pre-

judgment interest be awarded on plaintiff's total unpaid wages of $24,772.50 from April 7, 2017

to the date of this court's judgment at a per diem interest rate of $6.11 ($24,772.50 x 0.09/365).

    8.  Post-judgment Interest

      Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961(a).

Section 1961 provides that "interest shall be allowed on any money judgment in a civil case

recovered in a district court."  28 U.S.C. § 1961(a).  Under the statute, interest is calculated

"from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant

maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System,

for the calendar week preceding[ ] the date of the judgment."  Id.  Therefore, I respectfully

recommend that plaintiff be awarded statutory post-judgment interest.  See Fermin, 93 F. Supp

3d at 53 (finding that post-judgment interest is mandatory).

### C.  Attorney's Fees and Costs

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL.  See 29 U.S.C. § 216(b), N.Y. LAB. L. §§ 198, 663(1).  Plaintiff seeks an award of $6,200 in attorney's fees and $569 in costs.  (See Attorney's Fees and Costs, attached as Ex. 10 to Faillace Decl., Dkt. No. 33-10.)

District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case."  Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008).  When exercising their discretion to determine the reasonableness of attorney's fees, courts in this Circuit use the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam); Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); In re Phelan, 570 N.Y.S.2d 202, 203 (2d Dep't 1991).  Plaintiff has satisfied this requirement.  (See Attorney's Fees and Costs.)

The court next assesses whether plaintiff's counsel requests a reasonable hourly rate.  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on

"rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). A judge may determine prevailing rates based on evidence presented or his or her own knowledge of rates charged in the community. Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989). The "community" is generally considered to be the district where the court sits. See Arbor Hill, 522 F.3d at 190. Further, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate." Id. at 184 n.2 (citations omitted).

Plaintiff's counsel requests hourly rates of $450 for Michael Faillace,[10] $350 for Clela Errington, and $100 for the paralegal. (See Faillace Decl. ¶ 70; Attorney's Fees and Costs.) Mr. Faillace was the Managing Member of Michael Faillace & Associates, P.C. and has been in practice since 1983. (Faillace Decl. ¶ 70.) While Mr. Faillace has considerable experience litigating wage-and-hour actions, the rate requested is excessive under the circumstances of this case. The FLSA and NYLL are "straightforward" and "relatively simple." Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 208 (E.D.N.Y. 2007). The work required for this case was particularly simple because it was resolved on a motion for default judgment. See Sevilla v. House of Salads One LLC, No. 20 CV 6072, 2022 WL 954740, at *12 (E.D.N.Y. Mar. 30, 2022) (reducing Mr. Faillace's requested rate of $450 to $400 per hour because the case

---

[10] Mr. Faillace is currently suspended from practice in this district, but he may nonetheless be awarded fees because the hours billed for this matter pre-date his suspension. See In re Faillace, No. 21-MC-3192 (E.D.N.Y. Nov. 9, 2021) (adopting the Southern District of New York's Order in In re Faillace, No. M-2-238, which suspended Mr. Faillace for two years and stated that he "may be compensated on a quantum meruit basis for services rendered prior to the effective date of the suspension.").

was resolved on a motion for default judgment); Tapia v. CLCH 3rd Ave. LLC, No. 14 CV

8529, 2017 U.S. Dist. LEXIS 222415 at *8 (S.D.N.Y. Aug. 23, 2017) (lowering Mr. Faillace's

requested rate of $450 to $400 per hour because the case was resolved by a one-day bench trial

and therefore "particularly simple").  Accordingly, I find that a reasonable rate for Mr. Faillace is

$400 per hour.

   For similar reasons, I also find that the rate of $350 per hour is excessive for Ms.

Errington's work.  Ms. Errington is an associate and has been in practice since 2012.  "Courts in

the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners,

$200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal

support staff in FLSA cases." Martinez v. New 168 Supermarket LLC, No. 19 CV 4526, 2020

WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020), report and recommendation adopted, No. 19 CV

4526, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020) (collecting cases); see also Weng v. Fancy

Lee Sushi Bar & Grill, Inc., No. 15 CV 5737, 2017 WL 5564892, at *2 (E.D.N.Y. Nov. 3, 2017),

report and recommendation adopted, 2017 WL 5564593 (Nov. 18, 2017) (noting the same).

Therefore, due to the straightforward nature of this case and Ms. Errington's requested rate being

higher than the typical rate awarded to senior associates in this district, I recommend that Ms.

Errington's rate be lowered to $300 per hour.

   Lastly, plaintiff's counsel requests an hourly rate that is on the high end of the

rates ordinarily awarded to paralegals and other support staff in FLSA cases.  See Martinez, 2020

WL 5260579, at *9.  "Paralegals . . . typically receive an hourly rate of $75 in this district for

[FLSA] cases." Burns v. Nurnberger Corp., No. 16 CV 6251, 2018 WL 5927575, at *12

(E.D.N.Y. Sept. 17, 2018), report and recommendation adopted sub nom, Burns v. Kelly

Enterprises of Staten Island, LLC, No. 16 CV 6251, 2018 WL 5928106 (E.D.N.Y. Nov. 13,

2018) (collecting cases); see also Martinez, 2020 WL 5260579, at *9.  Accordingly, I find that a reasonable rate for the paralegal in this case is $75.

The court next looks to the reasonableness of the hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)).  The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).

Here, plaintiff's counsel seeks compensation for 23.30 hours of work.  (See Attorney's Fees and Costs.)  Of the total, Mr. Faillace worked 4.3 hours, Ms. Errington worked 8.4 hours, and the paralegal worked 10.6 hours.  (See id.)  Having reviewed the submitted time records, I find the claimed number of hours reasonable.  See, e.g., Zhang v. Asian Moon Rest. Corp., 20 CV 2776, 2022 WL 1422576, at *9 (E.D.N.Y. Mar. 15, 2022) (finding 44.8 hours to be within the reasonable range for a single-plaintiff FLSA default case), report and recommendation adopted, 2022 WL 1460275 (E.D.N.Y. May 9, 2022); Ahn v. Sun Cleaners Inc., 19 CV 5919, 2022 WL 586022, at *12 (E.D.N.Y. Feb. 18, 2022) (finding thirty-five hours to be a reasonable number billed in a single-plaintiff FLSA default case); Du v. CGS Metal Fabrication Inc., 19 CV 1821, 2022 WL 987316, at *13 (E.D.N.Y. Jan. 14, 2022) (finding 31.1 hours reasonable in a single-plaintiff FLSA default case); Said v. SBS Elecs., Inc., 08 CV 3067, 2010 WL 1265186, at *11 (E.D.N.Y. Feb. 24, 2010) (finding 41.35 a reasonable, though high, number of hours for a single-plaintiff FLSA default case), adopted as modified, 2010 WL 1287080 (E.D.N.Y. Mar. 31,

2010).  Accordingly, I respectfully recommend that plaintiff be awarded $5,035.00 in attorney's fees, consisting of $1,720.00 for Mr. Faillace ($400 × 4.3 hours), $2,520.00 for Ms. Errington ($300 x 8.4 hours) and $795.00 for the paralegal ($75 × 10.6 hours).

        Plaintiff additionally requests compensation for $579 in costs, representing $402 for this court's filing fee and $177 in service of process fees.  (See Attorney's Fees and Costs.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying."  Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiff has submitted sufficient documentary evidence for these costs.  (See Attorney's Fees and Costs.)  Accordingly, I find plaintiff's requested costs to be reasonable out-of-pocket expenses.

## CONCLUSION

        For the reasons set forth above, I respectfully recommend that plaintiff's motion be granted and that default judgments be entered against all defendants, jointly and severally. Regarding damages, I respectfully recommend that plaintiff be awarded a total of $64,353.00 as follows: $24,772.50 in unpaid wages, $2,054.00 in spread of hours damages, $26,826.50 in liquidated damages, $700 in tools of the trade reimbursement, and $10,000 in statutory damages. I further recommend that pre-judgment interest be awarded on plaintiff's unpaid wages of $24,772.50 from April 7, 2017 to the date of this court's judgment at a per diem interest rate of $6.11.  I also recommend that post-judgment interest be awarded at the rate set forth in 28 U.S.C. § 1961(a).  Finally, I recommend that plaintiff receive $5,035.00 in attorney's fees and $579 in costs.

Plaintiff is directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation.  Any objections to this Report and Recommendation must be filed electronically, with courtesy copies to Judge Chen and to my chambers, within fourteen days. Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Respectfully submitted,


_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
        September 8, 2022

26